# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

        Plaintiff,

v.                                  CASE NO: 8:13-cv-2577-T-26TGW

MADER LAW GROUP, LLC, ERIC A. MADER,
and SEAN BATCHELER,

        Defendants.

_____/

# **O R D E R**

Before the Court are cross motions for summary judgment: (1) Plaintiff's

Dispositive Motion for Summary Judgment, Statement of Undisputed Facts with

attachments, and Rule 30(b)(6) Deposition of the Mader Law Group, LLC (Mader Law)

with attachments (Dkts. 43, 46 & 48); the Response filed by Defendants Mader Law and

Eric A. Mader (Dkt. 50); and the Response filed by Defendant Sean Batcheler (Dkt. 54);

and (2) the Motion for Summary Judgment and Statement of Undisputed Facts filed by

Defendants Mader Law and Eric A. Mader (Dkts. 45 & 47), and Plaintiff's Response in

Opposition.  (Dkt. 52).  After careful consideration of the motions, the applicable law,

and the submissions of the parties, the Court concludes that both motions should be

denied.

## BACKGROUND

Travelers Casualty and Surety Company of America (Travelers) brought this action against its named insured, Mader Law, as well as insureds, attorneys Mr. Mader and Mr. Batcheler, for rescission of a professional liability insurance policy issued to Mader Law and for a declaration that Travelers owes no duty to defend or indemnify in two specific lawsuits.[1]  The grounds for rescission are based on alleged incorrect statements made in the application for coverage.

## **The Application**

Attorney Mader, the managing partner of Mader Law, signed the application for coverage on January 15, 2013, for the policy period of March 1, 2013, through March 1, 2014.  Travelers asserts that the following answers given to the questions on the application were material misrepresentations and, at the very least, inaccurate.

3.  Firm "trade" or "doing business as" name:     [left blank]
.   .   .   .

10.  Please estimate the percentage of your firm's gross
billings or revenues in each area.  The total must equal 100%.
.   .   .   .
Bankruptcy                 10%
.   .   .   .
Collection/Repossession    60%
.   .   .   .
Corporate/General          10%

_____

[1]  See docket 22.

.  .  .  .

Labor Litigation-Defense    20%

.  .  .  .

Other                                    [left blank]

.  .  .  .

20.  Do you share office space with any firm or attorney(s) who are not members of your firm?

[The "No" box was marked.]

.  .  .  .

25. Has any attorney in your firm ever had a disciplinary complaint filed with any court, administrative agency or regulatory body, or been disbarred, suspended, reprimanded, sanctioned or held in contempt?

[The "No" box was marked.]

26.  During the past 7 years, has any professional liability claim or suit been made or brought against your firm, a predecessor firm, or any current or former firm member?

[The "No" box was marked.]

27. Do you or any member or employee of your firm have knowledge of any incident, act, error, or omission that is or could be the basis of a claim under this proposed professional liability policy?

[The "No" box was marked.][2]

Above Mr. Mader's signature on the application, the following statement appears:

The statements and representations made in this application, all supplements and attachments to this application, are true and complete and will be deemed material to the acceptance

---

[2] See docket 43-11, pp. 2 & 4.

-3-

of the risk assumed by Travelers in the event an insurance policy is issued.[3]

### **Events Occurring Before the Date of Application**

When Mader Law applied for the policy on January 15, 2013, both it and Mr. Mader were named defendants in a lawsuit, Missouri v. Mader Law Group, LLC and Eric Mader, pending in the Thirty-Seventh Circuit of the State of Missouri.[4]  The lawsuit was filed on September 26, 2012, by the Attorney General of Missouri.  The petition sought permanent injunction and other relief in connection with violations of various state statutes involving the marketing, offering, selling, or administering of legal services to consumers in the nature of foreclosure rescue or mortgage loan modification.  Mader Law and Mr. Mader were allegedly improperly charging fees prior to performing foreclosure rescue work in violation of Missouri law.  The petitioner alleges the specific consumer example of Sherri Gibson, a Missouri resident who retained Mader Law in March 2012 and paid a $3,500 retainer fee for loan modification services.  Ms. Gibson was allegedly told not to make mortgage payments for the next six months but instead pay Mader Law.  Despite the existence of this lawsuit, Question 26 of the application was answered in the negligence.

---

[3]  See docket 43-11, p. 5.

[4]  See docket 43-3.

Florida's Attorney General began an investigation into Mader Law's conduct in 2011.[5]  Subpoenas were issued to Mader Law in the course of the investigation, and documents and information were provided by Mader Law to the Florida Attorney General.  Mr. Mader and Mader Law concede they were aware of the investigation at the time the application was filled out.[6]  Travelers contends that this information should have been considered in giving the response to Question 27 in the application.

One to two years prior to the time the application was completed, in 2011 and 2012, several former and current clients of Mader Law made disciplinary complaints to the Florida Bar against Mr. Mader.[7]  On March 2, 2012, the Florida Bar gave notice to Mr. Mader that the complaints had been made and that they were being investigated.[8]  Mr. Mader and Mader Law were aware of the notices no later than March 8, 2012.[9]  Travelers asserts that this information required that Question 25 of the application be answered in the affirmative.

---

[5]  See docket 43-1, pp. 93-94.

[6]  See docket 43-1, p. 95.

[7]  See docket 43-1 (Depo. of Mader Law, Mr. Mader as corporate representative) at pp. 36-37; docket 43-5 (Florida Bar Notices); and docket 43-6 (email dated March 8, 2012, from Eric Mader to Robby Birnbaum, an attorney for Mr. Mader).

[8]  See docket 43-5.

[9]  See docket 43-1, pp. 37-38 and docket 43-6.

In addition to the complaints filed with the Florida Bar, former and current clients filed twenty-nine complaints with the Florida Better Business Bureau (Florida BBB) between December 13, 2011, and January 7, 2013.[10]  The complaints included the firm's agreement to provide loan modification services, the firm's receiving a fee for those services before providing the services, the firm's advising the clients to cease making mortgage payments, and the firm's failure to provide services promised.  On September 23, 2012, the Florida BBB contacted Mader Law to inquire about the complaints and how they were being resolved.[11]  Travelers asserts that this information warranted an affirmative response to Question 25 of the application.

Although Question 3 of the application asked for other names the firm was "doing business as," Mr. Mader left the space blank.  Mr. Mader failed to list any other names by which Mader Law did business, even though it registered three different fictitious names, including Mader Law Associates on December 10, 2009; Mader & Associates on January 10, 2012; and Mortgage Relief Legal Center on October 17, 2012.[12]  Mr. Mader also failed to disclose in Question 20 that Mader Law shared space with American Financial Law Group, Mader Packer Attorneys at Law, and Meridian Law Group, which groups were made up of other attorneys not practicing with Mader Law.

---

[10]  See docket 43-1, pp. 47-50 & 84 and docket 43-9.

[11]  See docket 43-1, pp. 49-50.

[12]  See docket 43-1, pp. 54-55 & 88 and docket 43-10.

Finally, Mr. Mader attributed no percentage of the firm's work to loan modification service and mortgage foreclosure work.[13]  Travelers contends this type of work should have been mentioned under "other" in Question 10.

## Events Occurring During the Policy Period

On April 5, 2013, the Florida Bar issued sixteen probable cause findings for disciplinary proceedings against Mr. Mader.[14]  On October 8, 2013, the Florida Bar filed a petition in the Florida Supreme Court against Mr. Mader describing the seventeen client complaints in which Mr. Mader and Mader Law provided loan modification and foreclosure services.[15]  These actions resulted from complaints that were made with the Florida Bar before the application was completed.

On July 9, 2013, two individuals in Mississippi filed a lawsuit against Mader Law and Mr. Mader in a circuit court of Mississippi.[16]  The Rowes alleged that Mader Law and Mr. Mader had agreed to represent them in a home loan modification and through the course of the representation made misrepresentations, breached fiduciary duties, and breached a contract resulting in the foreclosure of their home.  Travelers undertook the

---

[13]   See docket 43-1, pp. 86-88.

[14]   See docket 43-7.  The Florida Bar rules violated encompassed fees and costs for legal services, unlicensed practice of law, and conduct involving dishonesty, fraud, deceit or misrepresentation.

[15]   See docket 43-8.

[16]   See docket 43-1, p. 98 and docket 43-13 (Complaint in Marc and Tasha Rowe v. Mader and Mader & Associates, Case No. CI-2013-0227-JC).

representation under a reservation of rights.[17]  The reservation of rights letter listed the failure to answer correctly or truthfully questions 3, 10, 20 and 25-27 in the application as grounds for rescission of the policy.

In August 2013, the Florida Attorney General filed suit against Mader Law, Mr. Mader, and Mr. Batcheler in the circuit court for Palm Beach County, Florida.[18]  The lawsuit alleges that as early as January 2010, the named defendants engaged in unfair and deceptive acts against consumers.  The acts were committed under the auspices of mortgage-related services in a fairly elaborate manner.  Travelers agreed to provide a defense subject to a reservation of rights.[19]  The reservation of rights letter contained the same references to the questions answered in the application.

On October 4, 2013, Travelers provided notice of rescission to all Defendants.[20]  Travelers enclosed in the letter a check in the amount of $3,217.22 as a return of the premiums paid for the policy.  The reasons for rescission included the failure to accurately or truthfully answer the questions set forth in the reservation of rights letters sent regarding the Rowe lawsuit and the Florida Attorney General's action.

## SUMMARY JUDGMENT STANDARD

---

[17]  See docket 46-2, Exh. A.

[18]  See docket 43-1, p. 91 and docket 43-12 (Complaint in State of Florida v. Mader Law, Mr. Mader and Mr. Batcheler, Case No. 2013 CA 12592.

[19]  See docket 46-2, Exh. B.

[20]  See docket 46-2, Exh. C.

Summary judgment is properly granted where there is no genuine dispute regarding a material fact.  Fed.R.Civ.P. 56(a).  On a motion for summary judgment, the court must review the record, and all its inferences, in the light most favorable to the nonmoving party.  See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).  The court does not make credibility determinations or weigh conflicting evidence.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  Where the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## DISCUSSION

This Court's jurisdiction derives from diversity of citizenship pursuant to 28 U.S.C. § 1332.  A federal district court applies the choice-of-law principles of the forum state.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97, 61 S.Ct. 1020, 85 L.Ed. 1188 (1941); Rando v. Gov't Emps. Ins. Co., 556 F.3d 1173, 1176 (11th Cir. 2009). Florida follows the *lex loci contractus rule*, which provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties.  State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160, 1163-64 (Fla. 2006).  In the case of an insurance policy, what constitutes the place of execution depends upon the particular

case.  See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Beta Constr. LLC, 816 F.Supp.2d 1256, 1260 (M.D. Fla. 2011).  The parties agree that Florida law is controlling.

## The Motions

Travelers seeks summary judgment on both counts of the complaint for rescission and a declaration that it has no duty to defend or indemnify the two lawsuits[21] filed against Defendants during the policy period.  Travelers contends Mader Law made material misrepresentations in the application.  Specifically, (1) a professional liability claim, the Missouri Attorney General action, had been filed against Mader Law and some of its members; (2) disciplinary complaints had been filed against Mader Law and Mr. Mader with the Florida Bar, a regulatory body; (3) Mr. Mader and employees of Mader Law knew of incidents, acts, errors or omissions that could be the basis of a claim; (4) Mader Law failed to disclose that it practiced in the area of loan modifications and foreclosure services; and (5) Mader Law failed to disclose its three fictitious names. Mader Law and Mr. Mader counter that (1) the policy's misrepresentation condition bars rescission, (2) the application was not a part of the policy and therefore not a part of the contract between the parties, and (3) the answers or omissions provided in the application were accurate given the unclear wording of the questions.  Mr. Batcheler claims to be an innocent insured under the policy and therefore the policy cannot be rescinded as to him.

---

[21]  The two lawsuits are the Rowe case and the Florida Attorney General action.

Mader Law and Mr. Mader's motion simply seeks a ruling in their favor on the amended complaint.

Florida statutory law permits rescission of an insurance policy for a "misrepresentation, omission, concealment of fact, or incorrect statement." See Fla. Stat. § 627.409(1).[22] The incorrect statement need not be intentional. Continental Assurance Co. v. Carroll, 485 So.2d 406, 409 (Fla. 1986) (reiterating that the plain meaning of section 627.409 indicates that a nonintentional misstatement in an application for insurance will prevent recovery under the policy where the insurer would have altered the

---

[22]   Section 627.409(1) provides:

>   (1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and not a warranty.  Except as provided in subsection (3), a misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:
>
>   (a) The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of risk or to the hazard assumed by the insurer.
>
>   (b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

terms of the policy or the misstatement materially affects risk).  It need only be material.[23]

Carroll, 485 So.2d at 409.  The right to rescind may be exercised (1) when the applicant

made misrepresentations in the application that were either fraudulent or "material either

to the acceptance of the risk or to the hazard assumed by the insurer," or (2) when the

insurer would not have issued the policy or would have issued it under different terms had

it known the truth.  See Fla. Stat. § 627.409(1)(a) and (b); Miguel v. Metropolitan Life

Ins. Co., 200 F. App'x 961, 967 (11th Cir. 2006) (unpublished opinion).  Either subsection

of the statute may be satisfied to establish entitlement to rescission.  See S.R.R.B. ex rel.

Vreeland v. Life Investors Ins. Co., No. 8:08-cv-960-T-17MAP, 2010 WL 963789, at *6

(M.D. Fla. Mar. 15, 2010) (stating that "an insurer need only satisfy one of the standards

to rescind an insurance policy based upon a misrepresentation).

   The parties, however, through the wording of the policy may "contract out of" the

statutory entitlement to rescission, so long as the contract is not void as against public

policy or statutory law.  See Green v. Life & Health of Am., 704 So.2d 1386, 1390-91

---

[23] "A misrepresentation is material if it affects the risk undertaken by the insurer." Fla. Stat. § 627.409(1); Mims v. Old Line Life Ins. Co., 46 F.Supp.2d 1251, 1256 (M.D. Fla. 1999).  If a truthful statement had been made instead of the misrepresentation, such truthful statement would put a careful insurer on notice of further inquiry.  S.R.R.B. ex rel. Vreeland v. Life Investors Ins. Co., No. 8:08-cv-960-T-17MAP, 2010 WL 963789, at *6 (M.D. Fla. Mar. 15, 2010) (citing King v. Allstate Ins. Co., 906 F.2d 1537, 1540 (11th Cir. 1990) for the proposition that parties are free to "contract-out" or "contract-around" state or federal law with regard to insurance contracts absent anything void as to public policy or statutory law in the contracts).

(Fla. 1998) (citing <u>King v. Allstate Ins. Co.</u>, 906 F.2d 1537, 1540 (11th Cir 1990)).[24]

Mader Law and Mr. Mader contend that the policy's misrepresentation clause amounts to an agreement to place less stringent standards on the insured for purposes of the answers given in the application:

> XIX.   MISREPRESENTATION
> This policy may be considered void if, after the Inception
> Date of the Policy Period set forth in Item 2 of the
> Declarations, any Principal Insured has intentionally
> concealed or misrepresented any material fact or
> circumstance, concerning this insurance or the subject thereof,
> provided that section XIX, MISREPRESENTATION does
> not apply if such Principal Insured mistakenly:
> A.      failed to disclose information to the Company; or
> B.      mislead the Company.[25]

Travelers contends that the misrepresentation condition does not apply to the application or to any actions before the inception date of the policy, March 1, 2013, thereby permitting rescission under the statute.

### Misrepresentation

---

[24]   <u>See also</u> <u>Vreeland</u>, 2010 WL 963789, at *3 (citing <u>Mims</u>, 46 F.Supp.2d at 1256); <u>Universal Prop. & Cas. Ins. Co. v. Johnson</u>, 114 So.9d 1031, 1035 (Fla.Dist.Ct.App. 2013).

[25]   <u>See</u> docket 22-1, p. 13 (numbered p. 6 of the policy under terms and conditions section).  A Principal Insured is defined by the policy as "a member of the board of managers, director, executive officer, natural person partner, owner of sole proprietorship, principal, risk manager, or in-house general counsel of the Named Insured."  <u>See</u> docket 22-1, p. 18 (numbered p. 5 of the policy under professional liability coverage section). The Named Insured under the policy is Mader Law.  <u>See</u> docket 22-1, p. 5 (numbered p. 1 of declarations section).

First the Court must ascertain whether a misrepresentation was made, which hinges on whether the statute's definition applies or whether the policy provides a different standard.[26]  On this point, Travelers primarily relies on <u>Zurich Am. Ins. Co. v. Diamond Title of Sarasota, Inc.</u>, 2013 WL 6283684 (M.D. Fla. Dec. 4, 2013), and <u>Amtel Corp. v. St. Paul Fire & Marine</u>, 426 F.Supp.2d 1039 (N.D. Cal. 2005).  Mader Law and Mr. Mader rely on <u>Strickland Imports, Inc. v. Underwriters at Lloyds, London</u>, 668 So.2d 252 (Fla.Dist.Ct.App. 1996), and various other cases.  <u>See</u> <u>State Farm Fire & Cas. v. Oliver</u>, 854 F.2d 416 (11th Cir. 1988); <u>King</u>; <u>William Penn Life Ins. Co. of N.Y. v. Sands</u>, 912 F.2d 1359 (11th Cir. 1990); <u>Gamez v. Ace Am. Ins. Co.</u>, No. 11-22842-CIV, 2012 WL 6019284 (S.D. Fla. Dec. 3, 2012).

At the outset, it is necessary to point out that Travelers' application does not contain a clause asking the applicant to answer the questions "to the best of your knowledge and belief."  Upon signing the application, the applicant warrants that the answers given "are true and complete."  The wording of the application, therefore, does not lower the standard of the statute.  Accordingly, this case is distinguishable from the cases in which an inaccurate but truthful answer does not support rescission.[27]

---

[26]  Because both motions seek a ruling on how the misrepresentation clause affects statutory rescission, the discussion in the text of the order here will cover all points made in the motions and responses.

[27]  For some of the cases analyzing that phrase in the context of applications, <u>see</u> <u>Green</u>; <u>Miguel v. Metropolitan Life Ins. Co.</u>, 200 F. App'x 961 (11th Cir. 2006) (unpublished opinion) (finding that statements were false under the "knowledge and belief" standard in the application); <u>Hauser v. Life Gen. Sec. Ins. Co.</u>, 56 F.3d 1330 (11th

In reviewing the case law that analyzes whether the parties have contracted to different terms from those provided by the statute, the Court has found no case interpreting the precise policy language as in this case.[28]  Travelers relies heavily on Zurich, in which the application voided the policy if the applicant made a "misrepresentation of material fact."  The language in the application did not require that the misrepresentation be intentional.  Although the order is silent about the wording of the policy, a review of the docket in that case indicates that the application was specifically made a part of the policy.  The court in Zurich found that the policy did not change the standard of the statute and found that Oliver and Sands were inapplicable.  In Oliver, the policy limited rescission to intentionally concealed or misrepresented material facts, and in Sands, the "knowledge and belief" language of the application altered the standard for measuring the response to the questions in the application.

The wording of the policies in Oliver and Strickland is similar to the wording in the condition clause in Traveler's policy, with the exception of the time component.  In Oliver, the operative clause provides that if the insured "has intentionally concealed or

cit. 1995); Sands; Darwin Nat'l Assurance Co. v. Brinson & Brinson, Attorneys at Law, P.A., No. 6:11-cv-1388-Orl-36DAB, 2013 WL 2406154 (M.D. Fla. June 3, 2013) (finding that statements were false under the "knowledge and belief" standard in the application). For cases distinguishing Green based on the nonexistence of the "knowledge and belief" standard in the application, see Ocean's 11 Bar & Grill, Inc. v. Indem. Ins. Corp. RRG, No. 11-61577-CIV, 2012 WL 2675367, at *4 n.9 (S.D. Fla. July 6, 2012), and Reshke v. Guarantee Trust Life Ins. Co., No. 8:04-cv-2035-T-23, 2006 WL 680808, at * 2 n.7 (M.D. Fla. Mar. 16, 2006).

28

misrepresented any material fact or circumstance" relating to the insurance, the policy is

void.  In <u>Strickland</u>, the clause makes the policy void if the insured "has wilfully

concealed or misrepresented any material fact or circumstance" concerning the

insurance.[29]  Both the Eleventh Circuit in <u>Oliver</u> and a Florida appellate court in

<u>Strickland</u> held that the parties had contracted for less stringent terms for the insured,

requiring intentional misstatements in the application to void the insurance.

The only difference in the wording of the pertinent clause in this policy is the

addition of the phrase "after the Inception Date of the Policy Period set forth in Item 2 of

the Declarations."  Travelers contends that the addition should be read to mean that only

those misrepresentations or omissions occurring after March 1, 2013, should be subject to

the less stringent intentional standard.  Mader Law and Mr. Mader contend that the clause

can be read another way– that the policy must actually exist before it can be void– and

therefore only intentional acts or omissions, as opposed to innocent ones, will void the

policy.

---

[29]   <u>King</u> and <u>Gamez</u> construe similar clauses and both cases found that the parties
changed the statutory standard to provide cancellation only in the event of intentional
misrepresentation.  The verb tense used was different in both <u>King</u> and <u>Gamez</u>.  The
intentional conduct is couched in terms of the present tense, implying that the conduct is
yet to occur, once the policy comes into existence.  The altered tense does not appear to
change the construction of the clause in the policy, however.  In <u>King</u>, the binder referred
to the statements in the application and made them subject to the terms of the policy.  In
<u>Gamez</u>, the policy contained an integration clause, and the misrepresentation clause
specifically referred to the application and stated that coverage would be voided for
intentionally concealing or misrepresenting any material fact relating to the policy *or the
application.*

Reading the contract of insurance as a whole,[30] and resolving any ambiguities in favor of the insured,[31] as this Court must, the reference to the inception date of March 1, 2013, does not change the outcome based on Oliver, King, or Strickland.  The reasoning of those cases focuses on the parties' agreed change in standard as applied to any misrepresentations or omissions either before or during the policy term.  Although Traveler's application here states that all representations are true, Traveler's policy contains an integration clause making the policy and other specific documents the entire agreement between the parties.[32]  The policy never incorporates the application, the application's standard, or the statutory standard.  Moreover, the addition of the date to the policy's misrepresentation clause does not clearly preserve the statutory standard for the benefit of the insurer.  Because the temporal phrase may be read to simply acknowledge, clarify, or emphasize that the policy must exist before it can be void, this clause is no different from the ones in Strickland and Oliver.  As to the provisions construed in King and Gamez, although seemingly referring to conduct occurring only after the policy

---

[30]   See Chestnut Assocs., Inc. v. Assurance Co. of Am., 2014 WL 1711579 (M.D. Fla. 2014) (citing Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000)).

[31]   See LaTorre v. Connecticut Mut. Life Ins. Co., 38 F.3d 538, 540 (1th Cir. 1994).

[32]   The policy states that "[t]he Declarations, the Professional Liability Terms and Conditions, the Professional Liability Coverage, and any endorsements attached thereto, constitute the entire agreement between the Company and the Insured."  See docket 22-1, p. 7 (numbered p. 3 of the declarations).

-17-

became effective, the policy standard was found to replace the prior stricter standard with reference to statements in the application.[33]

Having determined that the parties contracted out of the statutory standard, the next question is whether Mr. Mader intentionally concealed or misrepresented facts or circumstances in his answers to particular questions in the application.  Mr. Mader contends that rather than being untruthful in answering the questions in the application, he simply answered ambiguous questions as he interpreted them.  Travelers argues that the questions were unambiguous, particularly to an attorney, and Mr. Mader intentionally concealed or misrepresented facts in his responses.  If this Court finds the questions unambiguous, the question of whether Mr. Mader gave his responses with the intent to deceive must be decided by a jury.  See World Serv. Life Ins. Co. v. Bodiford, 492 So.2d 457 (Fla.Dist.Ct.App. 1986).

## Application Questions

Ambiguity for purposes of application questions is defined as "susceptible to two reasonable interpretations, one in which a negative response would be correct and one in

---

[33]    Travelers cites Amtel, a case outside this jurisdiction.  The district court in Amtel considered a similar clause without a temporal phrase and distinguished misrepresentations in applications from misrepresentations in claims, which naturally arise after the start of the policy.  Amtel held that the misrepresentation clause in the policy did not affect the standard of a similar California statute regarding an insurer's rescission rights for misrepresentations in the insurance application.  The court held that the misrepresentations referred to in the policy were directed toward a claim for benefits, as opposed to the formation of the insurance contract itself.

which an affirmative response would be correct." <u>Mercury Ins. Co. v. Markham</u>, 36

So.3d 730, 733 (Fla.Dist.Ct.App. 2010).[34]  The test is objective in the sense that "the issue

is whether an objectively reasonable person in [the applicant's] situation . . . could

truthfully answer the question in either the affirmative or the negative." <u>Markham</u>, 36

So.3d at 733.  Any ambiguity must be construed against the insurer.  <u>Markham</u>, 36 So.3d

at 733.

### <u>Question 25: Prior Disciplinary Complaints</u>

Question 25 of the application asks whether any attorney in the firm has ever had a

disciplinary complaint filed with a court, administrative agency or regulatory body.   At

the time the application was filed, several complaints had been filed with the Florida Bar

against Mr. Mader and Mader Law alleging violations of several Florida Bar Rules.  They

were aware of the complaints sometime in March 2012.  After investigation by the

Florida Bar, some of these very complaints resulted in probable cause notices and an

eventual complaint filed by the Florida Bar with the Florida Supreme Court during the

policy period in 2013.  The violations centered around loan modifications and foreclosure

services provided by Mader Law.

Mr. Mader takes no issue with the wording of the question.  He admits that he

knew of the complaints in March 2012, well before he signed the application for Mader

---

[34]   <u>See also</u> <u>Ocean's 11 Bar & Grill, Inc. v. Indem. Ins Corp.</u>, No. 11-61577-CIV,
2012 WL 2675367, at * (S.D. Fla. July 6, 2012) (citing <u>Markham</u>).

Law in January 2013.  Mr. Mader testified as the 30(b)(6) representative for Mader Law that he believed his "no" answer was correct because he did not consider the Florida Bar complaints and notices "germane to the coverage."[35]  He further testified that the complaints were "still pending" and would "get resolved without any issue."  He opined that he did not think he would ask Travelers for coverage in connection with those complaints.

Mader Law and Mr. Mader argue now that a grievance filed with the Florida Bar is not a disciplinary complaint.  They argue that a complaint made with the Florida Bar that has been referred to a grievance committee for investigation of probable cause is not a disciplinary complaint filed with a regulatory body, administrative agency, or court.  By these assertions, they claim that this question is ambiguous, capable of being answered either yes or no.

Question 25 is not ambiguous.  Mr. Mader shares the same situation as the applicant in Darwin– an attorney filling out an application for professional liability insurance.  The district court in Darwin analyzed a very similar question asking whether any attorney had been the "subject of any bar complaint, investigation or disciplinary proceedings within the past 10 years."  The law firm failed to reveal two bar complaints that existed during the prior 10 years.  The Darwin court did not find the question

---

[35]   See docket 43-1, p. 79.

ambiguous but held that the answers constituted misrepresentations as a matter of law under the statutory standard of an inaccurate statement.

A complaint filed with the Florida Bar could be characterized as either a bar or disciplinary complaint.  The question asks whether a disciplinary complaint was filed with a regulatory body.  The Florida Bar is a regulatory body, and the nature of the former and then current clients' concerns were directed toward violations of the professional rules conduct and could therefore result in discipline to the attorney and firm.  The question does not ask whether the complaints had been resolved, nor does it matter that Mr. Mader, in his mind, had no intention of seeking coverage for those complaints.  It is not objectively reasonable for an attorney applicant to withhold the fact that complaints had been filed with the Florida Bar and delegated to a grievance committee.  It is irrelevant to answering the question that the attorney applicant believed the complaints lacked merit.

### Question 26: Prior Suits

Question 26 asks whether any professional liability claim or suit had been made or brought against the firm or member of the firm.  The Missouri Attorney General had filed a suit against Mader Law and Mr. Mader in September 2012.  Mader Law and Mr. Mader had been served with the complaint in October 2012, which was before Traveler's application was completed.  They argue that the term "professional liability claim" was not defined in the application, and the Missouri litigation was not a professional liability

claim.  Although the petition asserts violations of Missouri statutes for unlawful merchandising practices, foreclosure consulting, and the unauthorized practice of law, they contend that none of these claims are professional liability claims.  In as much as the petition specifically alleges violations for practicing law without a license in Missouri, Mr. Mader cannot persuade this Court that such a claim would not be encompassed in the term professional liability claim.

With respect to the reasons given for omitting the Missouri lawsuit from the application, Mr. Mader testified that he "felt at the time it wasn't germane to what was going on, and I didn't intend to have Travelers assist with it."[36]  With respect to the Missouri lawsuit and Question 26, he stated that he "didn't think it was part of what they were asking" and "it seemed like a frivolous suit."[37]  Mr. Mader as a knowledgeable attorney cannot explain why he did not believe that a claim for the unauthorized practice of law did not constitute a professional liability claim.   It is irrelevant that he believed the suit was frivolous, as the merits of the claim were not asked.  That he did not intend to seek coverage does not excuse him from answering the question, or justify failing to disclose the lawsuit on the basis that the question was unclear given his level of mental sophistication.

*Question 27: Prior knowledge*

---

[36]   See docket 43-1, p. 75.

[37]   See docket 43-1, p. 75.

Question 27 of the application asks whether any attorney in the firm has knowledge of any incident, act, error, or omission that is or could be the basis of a claim under this professional liability policy.  This question is a typical question posed in insurance applications.[38]  Whether the answer to the question is a misrepresentation depends on a mixed subjective-objective test.  See Fidelity Nat'l Title Ins. Co. v. Houston Cas. Co., No. 6:11-cv-1438-Orl-28DAB, 2012 WL 4523666, at *5 (M.D. Fla. Sept. 30, 2012).  The subjective part concerns whether the insured had actual knowledge of a wrongful act, and the objective part involves whether a reasonable professional in the insured's position would expect a claim or suit to ensue.

Mr. Mader attempts to avoid the difficulty of explaining why he did not mention the Missouri lawsuit, the Florida Bar complaints and notices, the Florida BBB complaints, and the Florida Attorney General's investigation.  Mr. Mader argues that based on the nature of a claims-made policy such as this one, it would be impossible for any claims made prior to the policy period to be the basis of any claim under the proposed policy.  He testified that he did not think the Missouri lawsuit "was germane" or "had any validity."[39]  He again stated that he was not planning on Travelers covering the claim. When pressed for factual information as to why he did not believe individuals such as Ms.

---

[38]   See, e.g., Darwin; Zurich; Fidelity Nat'l Title Ins. Co. v. Houston Cas. Co., No. 6:11-cv-1438-Orl-28DAB, 2012 WL 4523666 (M.D. Fla. Sept. 30, 2012); Nat'l Union Fire Ins. Co. of Pittsburgh v. Sahlen, 807 F.Supp. 743 (S.D. Fla. 1992).

[39]   See docket 43-1, p. 76.

Gibson, whose claim was detailed in the Missouri complaint, would have claims against the firm, he based his belief on the retainer she signed and that Missouri did not have jurisdiction over the firm.[40]

 With respect to the Florida BBB complaints, Mr. Mader testified that he did not believe those complaints had anything to do with professional liability and that he did not think the Florida BBB was a real entity.[41]  He testified that he did not disclose the Florida Attorney General's investigation, even though he was well aware it existed as early as 2011,[42] because he did not think it was "specifically regarding professional liability at the time."[43]  He further testified that he was aware the investigation arose from services that Mader Law had provided to clients, and he did not believe Florida had jurisdiction.[44]  In any event, Mr. Mader admits that he had knowledge of the conduct that might lead to a claim or suit being filed against the firm.  Objectively, Mr. Mader states that he believed the nature of the clients' expressed dissatisfaction, as revealed through the investigations, lawsuit, and bar and BBB complaints, did not fall under the auspices of professional liability.  His belief is difficult to comprehend and certainly does not pass the objective

---

[40]  See docket 43-1, pp. 78-79.

[41]  See docket 43-1, pp. 84-86.

[42]  See docket 43-1, p. 94.

[43]  See docket 43-1, p. 97.

[44]  See docket 43-1, pp. 96-98.

test.  A reasonable attorney might expect a claim or suit to follow.  Question 27 is not

ambiguous.

### Question 3: Other names

Question 3 asks for any "trade" name or "doing business as" name of the firm.

Mr. Mader left it blank, knowing that the firm held three registered fictitious names in

January 2013.  Mr. Mader contends that Travelers could have made further inquiry as it

did on several other questions.  He also contends that the question is ambiguous because

it did not specifically refer to fictitious names.  Mr. Mader agreed at deposition that

question 3 asks for "doing business as" names.[45]  When asked in deposition why Mader

Law did not provide the three "doing business as" names, Mr. Mader testified that he

"considered everything as 'Mader Law Group,' even though we had other names."[46]

Mr. Mader's position defies logic.  Common sense dictates that an attorney would

know that a fictitious name is considered a "doing business as" name.[47]  Question 3 is not

ambiguous.

### Question 10: Areas of Practice

---

[45]  See docket 43-1, p. 89.

[46]  See docket 43-1, pp. 88-89.

[47]  See Mastro v. Seminole Tribe of Fla., 2014 WL 4085819, at *2 (11th Cir. Aug. 20, 2014) (unpublished opinion) (citing Florida law that a fictitious name or "doing business as" name does not create a separate legal entity but merely establishes another name with no independent existence to conduct business).

Question 10 requests a list of the areas of practice of the firm, designated by percentages.  Mr. Mader contends that if the practice of loan modification and foreclosure work were important to Travelers' underwriting, then the areas should have been listed separately.  When asked why he did not list the areas under "other," Mr. Mader testified that he did not know.[48]  The areas of practice are material because, as Traveler's underwriter Kristen Tenbensel-Montalvo averred, Travelers would not have authorized the issuance of a professional liability policy to a Florida firm providing loan modification and foreclosure services.[49]

Having determined that Mader Law's answers to the above-referenced questions are inaccurate, the remaining issue for the jury to decide is whether the answers were given with the intent to deceive.  See Bodiford.  Because the issue of rescission has not been determined on summary judgment, the issue of whether Mr. Batcheler is an innocent insured will be deferred until such time as the rescission issue is finally determined.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1)      Plaintiff's Dispositive Motion for Summary Judgment (Dkt. 48) is **DENIED**.

(2)      Defendant Mader's Motion for Summary Judgment (Dkt. 47) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on October 20, 2014.

---

[48]  See docket 43-1, p. 87.

[49]  See docket 46-1.

_s/Richard A. Lazzara_

**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record